at number 24-1381, Ethanol Boosting Systems v. Ford Motor Company. Mr. Siegel. Good morning, Your Honors, and may it please the Court, Steven Siegel for Ethanol Boosting Systems, NMIT. Today I will address the threshold issue of the Board's stay and then move on to the claim construction question. Beginning with the stay, the Patent Office is a creature of statute whose authority to act ultimately must be grounded in an express grant of authority from Congress. In the America Invents Act, Congress granted the Patent Office only narrow stay authority as specified in 35 U.S.C. Section 315D. Congress did not grant the Patent Office general stay authority nor the specific authority to indefinitely hold in abeyance a party's rehearing petition pending the outcome of pending litigation. In our Article III Courts. So is there a certain time period that you demand the PTO to decide a rehearing request from a denial of an institution? There is case law that addresses the question of how long an agency must act, generally speaking, within a reasonable amount of time. But this is a slightly separate question because what the Board did here was not an invocation of its reconsideration or rehearing authority. It was an invocation of its stay authority. What the Board did was say, we see the need or we see the desire for holding the proceedings in abeyance pending an occurrence in some other proceeding in Article III Courts. And once that happens, then we will reconsider. Then we will exercise our reconsideration authority. So it's a distinct exercise of power than the question of how long an agency has to act on a rehearing petition. So although Tokyo Kikai and Hecmati v. United States and Cooley v. United States all describe the general rules about what is a reasonable amount of time for an agency to undertake its reconsideration, that is not exactly at issue here because what the Board did was fundamentally distinct from taking too long to act on a rehearing petition. I guess what I'm trying to understand is why wasn't this just a sensible act by the agency to wait for very, very relevant information to come out of a parallel proceeding, i.e., this court, which would be really pivotal to deciding whether or not there was a meritorious IPR petition here? It may have been sensible, but the Board had no authority to do it. There's a sort of fundamental preset that issue here is that the Board, as a creature of statute, must act pursuant to some express or implicit grant of authority from Congress. And here there is neither any express or implicit grant of authority. So when we speak about an agency's inherent reconsideration authority, we're not talking about some constitutionally inherent authority like courts have in Article III from the existence of Article III of the Constitution. What we're talking about is does the Board or does the Patent Office have the authority to do what it did here, and it did not. Well, it certainly had the authority to reconsider its institution decision, right? That's right, Your Honor. And if it had instituted it and said, look, it looks like there might be a different claim construction. We're going to reinstitute. And then they said, we're going to wait and see. You know, I assume your argument is that they're bound by a statutory time limit once they've instituted, right? Yeah, once they've instituted, they're bound by a statutory time limit. Well, what if during, you know, towards the end of that time period, the Federal Circuit comes out with a new claim construction. They say, we're going to reconsider this all again. Would that have all been okay? That would have been fine. So in essence, they could do what they wanted to, what they did here. They just had to jump through different hoops. I don't think that's exactly right. What happened here was at the time that Ford raised its rehearing petition, it did not actually have a basis for reconsideration that the Board intended to act on. There was no factual basis or specific facts from which a reconsideration. Had the district court's decision not yet been appealed? The district court's decision had been appealed. Why isn't that a pretty good indication that there could be a new claim construction coming down the pike? I don't think the Board was wrong to suspect that there might be a new claim construction that would come down. But fundamentally, what it cannot do and what it would create a loophole or let's just say a relatively unbounded set of authority for the Board to say at any point in time where there's parallel proceedings and we believe it might be sensible to wait. I mean, the answer is that, you know, sometimes the parallel proceedings are stayed in the district court waiting on the outcome of the IPR. Why isn't the same thing going to happen here? You're saying that the PTO doesn't have any authority, but I don't see anything that says they don't have the authority to reconsider and to wait until a contingent event happens until they make that decision to reconsider. I think, let me step back and we of course cited Ethicon versus Quigg in our papers and I think it provides a useful framework for thinking about this issue in a similar context. In that instance where there was a request. Well, we're going to start with the notion that the Board certainly has the power to reconsider its institution decisions. You agreed with that. I do, Your Honor. Tell me where in the statute does it say it doesn't have the power to gather further information before it makes that reconsideration decision. It certainly has the power to gather more information if there was a factual basis that said at present there is a basis to reconsider. There's no statutory limitation on how the Board, the manner in which it goes about reconsidering. That's right, Your Honor. That's what this issue is, the manner. Here they chose to hold something in abeyance, right? I think that... Why don't they have the inherent authority? For example, say the Board in considering the reconsideration motion decides when it's going to do that. It decides what information it needs to do that. Clearly they have the inherent authority to decide what information they need, correct? They have both the inherent and the expressed authority. So why doesn't that cover the manner in which they choose to consider and decide a reconsideration motion? Because in this instance, what has happened is the manner in which they've chosen to exercise their authority was to say we are going to pause proceedings indefinitely. I understand that. And you raised earlier, I thought you were starting off by saying the only question here is whether they took a reasonable period of time. Are you agreeing that they have the inherent authority to manage the manner in which they decide, the manner in which they're going to treat and decide the reconsideration motion? At a general level, I do agree with you, Your Honor. That they have that inherent authority? I wouldn't say that it's inherent authority. I would refer to it as statutorily implicit authority. But the distinction that I'm drawing is between the statutorily implicit authority to manage reconsideration in terms of gathering additional information, the exercising the power of reconsideration. You're not making an Ethicon-Quigg type argument that there's no inherent authority at all? I am making an Ethicon versus Quigg argument that there is no inherent stay authority. So what I'm trying to carve a distinction between is when an agency… Nobody said stay. That's not quite right, Your Honor. Ford didn't ask for stay. He asked for it to be held in abeyance, right? Your Honor, that's not exactly right. So if you return to Appendix 553, which is Ford's reconsideration petition, it says in the first paragraph, the board has a way to eliminate prejudice to petitioner, promote efficiency, and promote the interests of justice, I think was what they meant to say. A stay of its decision on rehearing. So Ford expressly asked for a stay. That's the language. When I read Ford's request, the only place stay came up was in the last sentence on the last page. They consistently asked for being held in abeyance. I'm not sure that I see a distinction between those, but I do say that Ford did ask for a stay and the board granted it. If you look, if you word search for stay, the only place you find stay is on page 554. Yes, Your Honor. I think that's the passage I just… Where Ford said in the alternative, the board can institute review and stay the deadlines. Now, I don't quite know what they had in mind when they said that, but that is not Ford asking for a stay. Your Honor, actually, if you turn to the previous page on Appendix 553, the first full paragraph, the third sentence, is when they request a stay of its decision on rehearing. First full paragraph. So… I mean, isn't this all prevented from our review by the board when reviewing institutional decisions? No, Your Honor, it's not. What we are asking this court to review is… If you win, what are you going to ask us to tell the board to do? To de-institute, right? What we have asked the board to do, or this court to instruct the board, well, to vacate the stay and all decisions that flow from the stay, which includes the institution decision and the final decision. Right, you want us to de-institute. We can't do that. We haven't expressly asked. Well, the problem is if this court… You may not have expressly asked for it, but that's the only relief that will help you. Right, but… If we actually get to the merits, because we can't review the institution decision, then you have to argue on the merits. That's correct, Your Honor. But I don't understand why this isn't barred by click-to-call. So, the reason that it's not is because if this, as we have requested a nunc pro tuum remedy, which is to say vacating the stay at the time it occurred and all subsequent decisions… All that is related to the decision to reconsider the denial of institution and then to institute, all wrapped up in institution, which you agree we can't review. I agree this court cannot review. It's been held in other cases that things like the estoppel bar and the time bar can't be reviewed in the context of an institution decision, and those also go to the board's statutory authority. So, what's the difference between this case and all those cases? So, what's different is, as this court articulated in Appel v. Vidal, what prevents reviewability by this court is something that is inherent in an institution decision. A stay, the decision whether to stay proceedings or not, is never going to be inherent. I think you're setting the wrong standard. I think some of our old cases used to say that it had to be something that was inherent in the decision of whether to institute decision, and so we couldn't review the questions on the merits about that. But click-to-call went far beyond that and said anything tied up with institution decision is barred from our review. So, I think if, as we have requested, there's a vacater of the stay and all decisions from it. I think our position is that at the time that it would go back to the board for remand, there is nothing that the board can act on at that point. You're putting the cart before the horse. We have to get out of the bar before we can review the decision to reconsider the institution decision after the stay. Right. I think what I'm trying to articulate, and I think in Appel v. Vidal, which I believe came after click-to-call, is that… What did we say we could review in Appel v. Vidal that's different than this case, or that's the same as this case? Well, there's nothing that's the same as this case. This is the first time that this issue has appeared. But what the language was used in Appel was that the fact that a holding may have a collateral effect on institution does not mean… What holding was in Appel that we decided we could review? Well, it was not reviewable in Appel, but that was the contents of the institution decision. You're just citing language that doesn't show anything. I mean, this is precisely the kind of legal challenge to an institution decision that click-to-call bars. All right. I respectfully disagree, Your Honor, but I'm going to briefly turn to claim construction with the remainder of my time. The Board adopted a claim construction that no party or tribunal has determined is substantively correct. Not the parties, not the district court, not the Board. And in adopting that construction, the Board erred in two independent ways. First was not undertaking any substantive claim construction analysis at all, which is required by 42-100. And the second was basing its decision on a rationale that is not cognizable. What if, hypothetically, we read neither the petition nor the preliminary patent owner response as asking the Board to undertake a Phillips-style claim construction analysis? I don't think that that makes a difference here. Then under circumstances like that, it wouldn't be wrong for the Board to just say, let's go with a plain and ordinary meeting-type approach for that particular claim limitation. I don't think that's exactly what happened here. The patent owner put before the Board its proposed construction at Appendix 729. It also put before the Board the district court's reasoning in support of that construction, which was Exhibit 2002. What if it looked like to the Board that the patent owner was simply arguing that there is a claim construction that occurred for an anti-knock agent that is controlling law. And so you as a legal matter Board are bound by it. And then if the Board disagreed with that and had good grounds to disagree with that legal argument, then did the Board really need to go any further? The Board did need to go further. The Board found it necessary in this decision. On Appendix 9, it said the construction of these terms was necessary to our decision. The substantive obviousness determination. And so whether it agreed with the party's constructions or not, it determined that this was dispositive of the petition. It had to assure itself that its reasoning in support of whatever construction it adopted was correct, and it did not. So the concern here is that even if we strip away the question of whether we asked for a Phillips-style construction, the Board had an affirmative obligation to assure itself that the construction it used was correct, and its rationale in support of that was also correct. And here it was wrong on both counts, and for two reasons. One, the Board erroneously believed that this court had vacated the district court's construction. It had not. The Board previously in its institution decision believed that it was bound by the district court's construction. And so it said we defer to that construction because we believe that that is what must govern our proceedings. And that's what led to the initial denial of institution. When it came back after the rehearing decision, it did not follow that same rule. It said we believe that the district court's construction had been vacated, and it was not vacated. So what is the relief that you want? You want this to go, at least for this particular issue, you want this to go back to the Board to engage in a Phillips-style claim construction? At a minimum, the final written decision must be vacated, although our view is that reversal is correct here. Because Ford did not present any obviousness argument or grounds for petition on the basis that the cited prior art disclosed the direct injection of a fuel that contains an anti-NOC agent that is not gasoline. There is a gasoline-only embodiment in the patent. Is there not? No, that's not correct, Your Honor. I thought that's what you told us the last time. We had an oral argument in this case. There is an ethanol-only construction. Right, but then Column 12, you were asked about a gasoline-only embodiment, and I believe I was listening to an oral argument.  I think that's the limp-home mode embodiment that exists, and that may be true. Yes. I'm sorry. I forgot, Your Honor. Right. And I believe in your briefing during the last appeal to this Court, your briefing indicated that the patent contemplates that Table 3 includes gasoline as a possible anti-NOC agent, and that any fuel counts as an anti-NOC agent, and that gasoline is a fuel. I'm sorry, Your Honor. Is this in the EBS-1, the initial appeal, or the second appeal? This is the 2022 appeal. The 2022 appeal. Yes, and the red brief at page 4 cites and quotes these passages from the briefing of the last appeal from EBS. So isn't that all correct to say that, in other words, the patent, just as it contemplates same fuel, because there was a same fuel embodiment in the patent, likewise it contemplates gasoline as being an anti-NOC agent, because there's a gasoline-only embodiment, and it's also been presented to this Court that gasoline is an anti-NOC agent. This, the Board would be within its rights to determine, it would be permissible for the Board to construe the terms and say, this is what we understand based on the construction we adopt. We understand that included within a construction that says, let's say it adopted a construction that says it must contain a fuel that contains an anti-NOC agent that is not gasoline. The Board, I suppose in theory, could say that we determined that that requirement is not necessary. The Board is free to adopt whatever construction it believes is correct, although we believe in this case that would not be permissible, based on the arguments that have been advanced by Ford in this case and the specification. If the evidence, if you will, or the information that the presiding judge is talking about is in the spec, then on remand, presumably the Board could point to that and say, we agree that the anti-NOC agent doesn't have to be gasoline, other than gasoline, so why wouldn't it be harmless there? In theory, the Board could. The problem here, as I understand what you're saying, is that the Board didn't articulate why it reached the conclusion on the anti-NOC agent. It didn't say it in its opinion, it just said that's what it is. That's not quite right. I think what we're arguing is that the Board, that its substantive basis, the construction itself was wrong. And its articulation of it was also wrong.  But what happens, this is all intrinsic evidence. There's no fact here. So why can't we look at the record? This Court has permitted. The information that's been on the table here and say, well, you know, we agree as a matter of law that that does sustain the decision of the Board as to what the anti-NOC agent is. This Court is, of course, under de novo review permitted to construe the claim terms. My point is, I mean, isn't that now really the issue for us to decide whether or not that Board's decision, unarticulated in its opinion, was correct? And therefore, the failure to articulate in this particular case is harmless error. If the Board's construction, if this Court deems the Board's construction to be substantively correct, then we have no basis to request remand and vacater on that, on the basis of an erroneous construction. I see I'm well into my rebuttal time. We'll do what we can to give you a little rebuttal time. Thank you, Your Honor. Let's hear from the other side. May it please the Court. I'd like to note at the start that I'm splitting time with counsel for the United States Patent and Trademark Office, who's reserved two minutes. I'd like to start with the first issue that counsel for EBS raised today regarding the Board's authority to institute. As Your Honors recognize, the Board had both inherent and statutory authority to reconsider its decisions in the manner that it did. And I would also note to Judge Clevenger's question about the requested relief that Ford had and point out that Your Honor is correct. At APPX 554, Ford requested that the Board hold its rehearing decisions in abeyance in the alternative to another suggested form of relief, which is, quote, the Board can institute review and stay the deadlines until the Federal Circuit issues its decision, end quote. But Your Honor is right that I overlooked on page 553 the word stay in line three of the final paragraph. You did use the word stay in addition to the word abeyance. That is true, Your Honor. The request, I was correct over on page 554 that that reference to stay is not talking about the same thing. That's correct, Your Honor. And what the Board chose to do here is to hold its decision in abeyance. And that's notable because at the time that it, the status quo at that time was that the institution of the proceedings had been denied. There were no proceedings that were ongoing to which, which should be stayed. And that distinction is demonstrated by the fact that there was no proceeding that was ongoing. And this is not a circumstance where Section 315B applies. Would you agree that if you had formally requested a formal stay, there would be an authority issue based on Ethiclon and CAIG, QUIG, other matters? Your Honor, if the Board had an instituted review that it stayed and paused proceedings, that would be a different circumstance. And that could present an issue with its authority. However, in a case where You're saying if, if, if, well, what happens if here, if the Board instead had said in answer to the request for reconsideration, we, we stay this proceeding? Your Honor, that hypothesis If the issuer just said we stay this proceeding pending further notification? Your Honor, the, that hypothetical would turn on whether or not the Board instituted review before issuing that decision. I think the statutory timelines governing IPRs put limits on what the Board can do with respect to timeliness on instituted decisions, as well as a time to issue a decision on institution. But in the circumstance where, as here, where institution had been denied, the Board was free to reconsider its decision in accordance with its inherent statutory authority, and it has the time, the reasonable time to do that. And that's the time that it took in this instance. Inherent statutory authority? Isn't statutory authority either explicit or not? The Board has the explicit statutory authority to reconsider and rehear its decisions. Yes, Your Honor. But what's the best case decision that you have that says that the agency has this particular authority, whether you want to call it implicit statutory authority or inherent authority, to sit on a pending motion, request for a hearing? This Court's decision in Saiwi v. Google, Your Honor. In that case, the Federal Circuit was considering a circumstance where the Board took longer than a, beyond the statutory time period to determine director review. And this Court wrote in that decision, the statutory provision setting specific deadlines for institution decisions and final written decisions say nothing of deadlines for any further director review of those decisions. Now, that concerned director review rather than rehearing. We submit to this Court that there is no difference with respect to the fact that in both instances, the Board is not prescribed by Congress a specific time to act on director review or on rehearing. Can you remind me a little bit more of the facts of Saiwi? Like, what happened there was, say, the patent owner trying to terminate an IPR proceeding on account of the agency taking too long? Your Honor, my recollection of Saiwi v. Google is that the appellant had argued that the director review had to be conducted and completed within the timeframe of the Board's statutory final written decision deadline. And I believe that this Court held that the director review timeline is not prescribed by the statutory deadlines for final written decisions. Put another way, the Board and the director have the discretion to take the appropriate time that they need to reconsider or rehear their decisions. And if I may, I'd like to turn briefly to the claim construction issue if there are no further questions. Could the Board sit on a rehearing request for two, three, four years? Because in your view, the agency has some kind of inherent authority to do that? The cases like Hekmati explain that the Administrative Procedure Act looks for a reasonableness timeframe that is highly fact-specific. And so the facts would very much dictate whether or not that would be appropriate. But whereas here, there was an already pending appeal on a purely legal issue that was directly controlling to the Board, and also the linchpin of the institution decision that was being timely moved for rehearing by the petitioner, in that circumstance, the Board's actions were reasonable for doing what it did here to hold its decision in abeyance for the Federal Circuit to speak on that legal issue. Now, on another point, if we disagreed with you on the authority issue and concluded that there is no inherent authority, no clear statutory authority or inherent authority to have the abeyance or the stay, then is the act of what they did a shenanigan under CUSO? No, Your Honor. I don't believe that this would rise to the level of, quote, shenanigans. Would it be a violation of law? I don't believe it would be a violation of law. And in the circumstance that you've suggested in your question, Your Honor, it would be the Board interpreting its statutory rules and its regulations and coming to a conclusion that was ultimately found to be unreasonable in that circumstance. But that wouldn't rise to the level of a violation of law or a shenanigan that deprives a patent owner of due process rights. And so for those reasons, the quote, so shenanigans circumstance, we would argue, does not apply to what the Board did here. Did you speak to the reviewability question? I don't recall. With respect to the reviewability question, we do submit, and as this Court signaled in its mandamus decision, 35 U.S.C. 314d does bar EBS's challenge altogether. It is a closely tied, if not directed. I'm curious you didn't start with that since that gets rid of a main part of their case altogether about whether there's authority or not. Yes, Your Honor, you're right. It's a threshold issue, and it should be the first issue that this Court should determine. But at bottom, 314d does bar EBS's attack on the- This particular issue is not one of the statutes or regulations that need to be applied that are bound up to the question of whether or not a petition ought to be granted, right? This is more a question of whether the agency has this other authority to hold on to, hold back on making a decision on a request for rehearing. Your Honor, we would submit that this is directly bearing on the Board's determination of whether to institute review and the manner in which it decides to institute review. As noted earlier, at the time of the rehearing request, there was a pending active Federal Circuit appeal on a legal issue that would bind the Board. On the very claim construction determination that the Board held was the reason that prevented institution. And so this is a decision in which the Board is- This is a circumstance where the Board is issuing an institution decision, and the manner in which it went about doing that is what EBS's challenge attacks. And for that reason, Section 314d would bar the appeal. Turning to the claim construction issue, I would just like to note that, as Judge Clevenger pointed out and Judge Chen pointed out, in the EBS 2 appeal, EBS submitted to this court that there was a gasoline-only embodiment and referred to that as a claimed embodiment at APPX 13278. And the argument there was that the district court's dual fuels construction at issue in the second appeal would read out this 100% gasoline embodiment. And for that reason, EBS submitted to this court that the patents do not place a type of limit on the type of fuels that can be used. And they also- There was the 100% ethanol embodiment they were afraid was getting excluded by the district court's construction. You just said 100% gasoline embodiment. Yes, Your Honor. So the specification details a 100% ethanol and a 100% gasoline disclosure. The district court issued its claim construction in the second case looking to both of those portions of the specification and supported its dual fuels construction with both aspects of the specification. Now, on appeal, EBS continued to point to both of those aspects of the specification in its briefing, in its opening brief, in its reply brief, and in colloquy before this panel of this court about what these patents were directed to. Now, the holding in 2022 focused on the 100- Were the Ford engines being accused of infringement in those- in that case, 100% ethanol engines? Your Honor, the engines that are accused for Ford engines, they are Ford's EcoBoost engines that run on gasoline that you can get at a pump throughout the United States. I guess what I'm asking is if what- and it appears to be what is the gist of all the arguments from the other side. Now, is that 100%, when we went and said it could be all one fuel in Ford, too, that that only meant the ethanol embodiment, not the all-gas embodiment. But if that's the case, there wouldn't have been an appeal there because your engines weren't 100% ethanol. So who cares if the construction, the broader construction they got was 100% ethanol because you still wouldn't have infringed. And this, Your Honor, you hit on a key point that never- Because, look, all of you play this game all the time. The plaintiffs want a broad construction in the infringement case and a narrow construction in the unpatentability case, and the defendants want the reverse. In this case, they got- you got a narrow construction from the district court. They got it vacated and got a much broader one that said it can be a single-fuel system. But if their point had been just to get a single-fuel ethanol system, the appeal would have been pointless because it wouldn't- your product wouldn't have infringed anyway. So I don't understand why our opinion- and granted, we have to go on what's written there, and perhaps it's not a model of clarity. But clearly, there's broad language in that that says 100% fuel. It can be the same fuel, and it didn't confine it to ethanol. Yes, Your Honor, I agree. And so why- I mean, the board's not bound by it anyway, and to the extent it's unclear, we're not bound by it. But that seems to me to be the correct interpretation. And if that's the case, then doesn't that just get rid of all this jousting about what the district court did, whether the board properly paid attention to it? We get to review all this de novo. And if our view is that claim, construction should be 100% fuel, one fuel, either gasoline or ethanol, then that takes care of this case, doesn't it? Your Honor, I would agree. And the two things I would note is that, first, that's precisely the exercise that the board had in front of it, which is to look at the holding of this court's 2022 opinion and determine what the construction of the term should be. And it did that. And second, with respect to any Phillips-based inquiry that this court chooses to undertake, I would remind the court of the Column 12 embodiment with respect to 100% gasoline. And with that, I'll cede the rest of my time to counsel for the use of PTL. Thank you. Good morning. May it please the Court. I'd like to start with the unreviewability. Can you address that Apple v. Vidal case he's talking about? Because you seem to be the only person that actually cited it in your brief. And I assume you didn't cite it for the proposition that that decision is reviewable. No. So Apple v. Vidal was about the board's precedential fintive decision and whether that was reviewable. But it didn't change the standard at all. I mean, I think the standard was set. Well, that doesn't help him. I mean, fintive is just about the board's own procedures for deciding when to institute in the face of different factors. And we clearly can't review that. And that's gone anyway, I think. True. But I think the question was, you know, if Apple says anything differently about the 314D standard than what's said in the Supreme Court. And I think if you go back to Quozo, it's – I mean, the main point here is, and I think this was the argument they actually made in their briefs, was that this should be governed by SAS, not Quozo and Click2Call. Well, SAS was about, I mean, a different issue that governs the proceedings after institution. And this was – I mean, the way that they framed this case was that the stay was the but-for cause of institution. And they're here asking you to essentially de-institute the case. And if that's not an institute-related question, then I'm not sure what is. It would be a different thing if they had come here during the delay period and said, you know, the agency is taking too long. Order the agency to act. That necessarily – that would be a different case. And that would not be an institution-related question because the institution had not yet happened. And the relief sought was basically just to make the decision. And here, the decision has been made. They acknowledge that the stay was the but-for cause, basically the reason that the institution decision flipped. And they're here saying that this should all be undone. So it's all directed towards the institution. And I don't think you have to get past that. What if the board had chosen to institute and then the day after institution said, okay, now we're going to stay. We think the district court construction is wrong, so we're instituting this. But we're going to stay because the federal circuit is going to tell us for sure which way to construe this claim. You know, that would certainly be a tougher case because we would be up against a statutory deadline, although I would note that this court's Purdue decision says that the agency can act even after the deadline. So I think that – Maybe the agency would say, we understand there's a one-year deadline for us to get to a final written decision, but there can be special circumstances or good cause to blow through that one-year deadline. We think that's here, and that's why we're going to stay it. Would the stay question be reviewable? I think it may be reviewable as part of the final written decision, yes, but because that's not – it was not necessarily a – well, I'm doubting myself. It has to be reviewable, right? Because institutions already occurred, and so this is the course of the proceedings and your decision. That's true. It's probably abuse of discretion, but it has to be reviewable. That's true. But if we get there, then that's starting to make the whole stay question its own individual animal, separate and apart from the nature of the institution. Because the difference here is that this is – the way that the argument is framed is all about institution, that if the stay hadn't occurred, this case would not have been instituted. And if it was coming post-institution, then it would be a different question about the board's conduct during the proceedings. And so I think that while I agree that the board had different options of how to get the result it wanted, I think the way that it did it now precludes the review of this stay. I mean, I guess on that point also, there's been some dispute about whether to stay or an abeyance. I don't think it really matters what you call it. It's simply the board exercising its inherent authority to manage its own docket. And I don't think that this court wants to get in the business of telling the board, you know, when it has to decide certain motions in what order. I mean, you'd be surprised what this court wants to get in the business of sometimes. But the Supreme Court's made it clear that we don't get in the business of reviewing anything connected to the institution decision. Yeah, I agree. And I think that that answers his question. What do you think the meaning of Ethicon v. Quig is? I could think of at least two ways to read it. Well, so, I mean, that I think, you know, it goes to the special dispatch language in the re-exam statute. And while IPRs are conducted under a certain timeline, the specific decision at issue here, the re-hearing decision, has no timeline. There's no statement of, you know, there's no statutory deadline. There's nothing about special dispatch. It's just as the SIWE decision said about director review, there is no timeline on that other than, you know, the idea that it has to be reasonable. So what about the statement in Ethicon v. Quig that the board has no inherent authority? Well. None. Isn't that what it says? I believe, yeah. I mean, that was the case where they were staying at a re-exam in view of a district court proceeding. The whole question about inherent authority came up in connection with another argument in that case. I would also say. And the one-liner was the board, only power the board has is what was given to it by Congress. I mean, that. No inherent authority. That's also, re-exams are a much different procedure, proceeding. I understand that. But you're going to distinguish the case on the grounds that that was a re-exam and this is an IPR? Yes, because an IPR is more of a. I would say that other than that distinction, would we be bound by that statement? Yeah, I think that the distinction matters here. I would agree that that's the way we're distinguishing it. And I would say the distinction matters because IPRs are more like trial proceedings and with different deadlines where the board is able to kind of manage its own docket, much like a district court. I would also note that Ethicon, the remedy awarded by the court, was vacating the stay. Unlike here where there. That doesn't have to do with the power. I'm talking about the power of the authority. I would say that the difference between an IPR and a re-exam is sufficient to distinguish it. You know, there's also the idea that this necessarily was. Is the reconsideration authority in the statute? No. I guess if we're reading Ethicon really strictly, then maybe there's no even authority to reconsider. Well, I'm not suggesting I agree with that. Yeah, no, I think that that goes against. If we're looking at the logic of the board can only do what's explicitly laid out in the statute, then the reconsideration comes from, I assume, the regs promulgated by PTO. Correct. Under the authority given to them in the AIA. Correct. And I think that if you're going to say that they can't reconsider decisions, that would go against kind of the general understanding this court has articulated that agencies have the inherent authority to reconsider their own decisions. So while it doesn't say it in the statute. But the rehearing authority was statutory. Not on the institution decision, no. There's 314, you know, talks about the institution decision, but it doesn't say anything about the board. I don't believe it says anything about the board reconsidering it. I think that that comes from the. Section 6, though, says. Yeah. Section what? Rehearing authority. Oh, yeah. Sorry, I thought you were talking about specifically in the AIA. Yeah. No, I agree that Section 6 in the statute says something about. That doesn't cover IPRs. No, it does. It does. You're confusing me. I mean, I thought it was clear that there was statutory authority for the board to decide, to greet and decide a motion to rehear the initial decision not to institute. Yeah. I apologize for that. And I was thinking specifically in the AIA, but yes. You almost dropped yourself to the bottom of the sea. Yeah. Section 6 does have, does authorize rehearing, as well as the inherent authority of agencies to reconsider their decisions.  Well, I would think your argument would be that they have the statutory authority to rehear, to reconsider. And the inherent authority to decide how to go about deciding it lies in the body of that statutory grant. And that's what distinguishes the case from Epcot against Quaid. Okay. Yes, I agree. And I thank you for that. Okay. Thanks very much. Thank you. Well, Mr. Segal, we're going to give you five minutes. Thank you, Judge Chen. I appreciate it. I'd like to begin, Judge Hughes, with a point that you raised about the claim construction issue. And I want to make sure that I'm clarifying something about the infringement positions of the parties and also why the different fuels construction is distinct from the separate requirement that the directly injected fuel contain a non-gasoline anti-NOx agent. An issue in the Markman appeal was whether or not the port-injected fuel and the directly injected fuel, and I should say fuel or fuels, had to be the same. And that was the only question at issue on that appeal. In arguing for that, we pointed to the 100% fuel embodiment to say, look, because 100% ethanol was injected through the port-injected system as well as the direct-injected system, that provided conclusive evidence that the patent owner did not disclaim a system in which the same fuel or fuels could not be both directly injected and port-fuel injected. The separate requirement, which is the one that we did not appeal from the district court, was the requirement that the directly injected fuel contain a non-gasoline anti-NOx agent. And with respect to Ford's engines, the contentions of… Yeah, but you put those two together, and the logic is that your claim on construction, when you won on the first part, meant that the only 100% fuel could be ethanol, right? Because if the unappealed portion required the direct injection to be ethanol, and you won on saying there can be a single fuel system, then it could only, under that logic, be ethanol. I don't think that's exactly right, Your Honor, because in that instance… Tell me how you could have a 100% gasoline system when your view is the unappealed part required it to be ethanol. I've looked at our briefing, and I did not see that we argued to the court that you can have a 100% gasoline embodiment at all times. We did point to the limp home mode in which 100% gasoline was… That's not answering my question. I don't understand what you're arguing to me when you say that our claim construction in that case didn't permit a 100% gasoline embodiment. Because if you're relying on the unappealed portion, which you say requires ethanol, right? The unappealed? In your view, the direct or something else, but not gas. Can we just say ethanol so we can get rid of the other possibilities? I don't know what they are. Sure. Your view is in that claim construction appeal, the unappealed portion required the direct injected to be ethanol. Sure. And in your other construction that you did appeal, you argued that there can be a single fuel for both the port and the direct. That's right. And so if the direct had to be an ethanol, then the port had to be ethanol too. That's right. We didn't hold that. Don't you think we would have understood us to be affirming just a 100% ethanol system if that's what you were arguing to us and you would have argued it more clearly? And would you have argued it at all because they don't have a 100% ethanol system? I think what we were trying to use that as an embodiment to explain why the same fuel could be both directly injected and port injected. We weren't using the 100% embodiment to say that the engine always had to have ethanol at all times, which is why we did not appeal the portion of the district court's construction because it permitted what we were arguing in our infringement contentions, which was that the direct injection and the fuel injection. Let me get this straight. If the result of our claim construction in that case was that the direct inject had to be ethanol and that we recognized that the port and the direct could be the same, would their system have infringed a system where the direct and the port were the same and it was ethanol? No, Your Honor. If it had to be 100% ethanol at all times, no, it would not have done that. And what would have infringed? I understand their argument was that they didn't infringe because they use gas in both. That's a misnomer. Their engines can use 90% gasoline and 10% ethanol blend. So they do infringe because it is a gasoline that contains an anti-knock agent, which is ethanol. So as long as it uses a 90% ethanol blend, it infringes under that construction. But isn't it also true that a purely gas-only embodiment would also infringe these claims? We are not taking that position. But, I mean, I need an answer for that question because if that were true, that a truly gas-only embodiment is captured by these claims, then that would exclude the requirement that you're seeking that the anti-knock agent be not gasoline. Agreed, Your Honor. We agree that a 100% gasoline embodiment is not contemplated by the claims in this case. I don't know if I have any brief. Just a final thought, please. One final thought, which is, Judge Chen, with respect to your hypothetical about SAS Institute, I wanted to raise the possibility that had the board simply issued an order granting Ford's request for a stay and not saying anything about institution but simply said, we are granting Ford's request to stay reconsideration pending what happens in future occurrence, that would be reviewable under 314D. That is not itself a decision whether to institute. It is simply a decision to stay. Thank you, Your Honors. Okay. Thank you, Mr. Siegel. The case is submitted.